1WILLIAM H. BYRNES III, Chief Judge.
STATEMENT OF CASE
On November 15, 2001, the State indicted Michael V. Thomas with one count of distribution of heroin, a violation of La. R.S. 40:966(A)(1), and one count of distribution of counterfeit controlled dangerous substance, a violation of La. R.S. 40:971.1. Thomas entered a plea of not guilty at his arraignment on November 20, 2001. On December 5, 2001, the trial court found probable cause and denied his motion to suppress the evidence. Thomas proceeded to trial by jury on January 8, 2002, after which he was convicted of attempted distribution of heroin. On March 27, 2002, the trial court sentenced Thomas to seven years, after which Thomas filed a motion to reconsider sentence, which the court denied, and a motion for appeal, which was granted. The State sought supervisory review of Thomas’ sentence on the ground that the trial court did not have sufficient justification for deviating below the minimum sentence, and that writ application (2002-K-0809) has been consolidated with this appeal.
STATEMENT OF FACT
DEA Special Agent Carlton Simmons testified that on April 5, 2001, he and the defendant met in Simmons’ car in the parking lot of the Spur L.Station on the corner of Magazine Street and Washington Avenue. The defendant sold Simmons two grams of heroin for $600.00. Simmons paid the defendant with pre-recorded currency. At the time of the transaction, Simmons had been wired fbr sound. Fellow agents set up surveillance, and manned videotape equipment from a concealed location across the street from the Spur Station. The audio and video recordings, played for the jury at trial, capture the defendant negotiating the purchase *48 price, and delivering the heroin to Agent Simmons.
On May 10, 2001, Simmons and the defendant had a second meeting during which the defendant sold Simmons three grams of a white powdered substance, purported to be heroin, for $900.00. Once again, Simmons paid for the reported contraband with marked currency. Like the first, this second transaction was captured on audio and videotape, and played for the jury at trial. Subsequent testing proved the substance was counterfeit. The defendant was arrested minutes after the second transaction. At the time of arrest, agents confiscated $80.00 in marked bills from the defendant’s pants pockets.
The defendant testified that on April 5, 2001, “Joe” and another man approached him, and told him he could make $100.00 by delivering an item for them. The defendant said he suspected what he was doing was wrong but was unaware of the contents of the item he was delivering. The defendant accompanied “Joe” to the Spur Station on Magazine Street where the defendant gave Agent Simmons the item in exchange for $600.00. The defendant admitted that he had a second meeting with Agent Simmons on May 10, 2001, at the same location, except that this time he delivered an Litem to the agent in exchange for $900.00. “Joe” gave the defendant $80.00 from the proceeds of the second transaction. The $80.00 was confiscated when the defendant was arrested.

ERRORS PATENT

A review for errors patent on the face of the record revqals one, which is discussed in the following assignment of error.

ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant argues the evidence is insufficient to support his conviction for attempted distribution of heroin. He suggests that the State failed to show his intent to participate in the distribution of heroin because it did not prove that he knew or should have known that the contraband was heroin.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Armstead, 2002-1030 (La.App. 4 Cir. 11/6/02), 832 So.2d 389. In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole |4since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, 523 So.2d 1305; Green, 588 So.2d 757. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of *49 collateral facts and circumstances from which the existence of the main fact maybe inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
In this case, the defendant was convicted of attempted distribution of heroin. La. R.S. 40:967 provides that it shall be unlawful for any person “knowingly or intentionally ... [t]o ... distribute, or dispense, a controlled dangerous substance classified in Schedule I.” Heroin is a Schedule I opiate derivative. La. R.S. 40:964(B)(11). A defendant is guilty of distribution of 1 Rheroin when he transfers possession or control of heroin to his intended recipient. See La. R.S. 40:961(14). To support a conviction for attempted distribution of heroin, “the State must prove that the defendant had the specific intent to commit the crime and did or omitted some act toward accomplishing his goal.” State v. McGee, 98-2116, p. 10 (La.App. 4 Cir. 2/23/00), 757 So.2d at 58. A person may be convicted of an attempt to commit a crime even where it appears that the defendant actually perpetrated the offense. La. R.S. 14:27; McGee, at p. 10, 757 So.2d at 58. To convict for distribution of a controlled dangerous substance, the State must show (1) “delivery” or “physical transfer;” (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance. State v. Kanost, 99-1822 (La.App. 4 Cir.3/29/00), 759 So.2d 184.
Applying these criteria to this case, Agent Carlton Simmons testified that he was wired for sound when that he met the defendant at two pre-arranged locations. On each occasion, the defendant entered the agent’s vehicle, produced a scale, weighed the heroin to establish a price, and accepted payment in marked currency from Agent Simmons. Agents Eric Becnel and Greg Norwood testified that they monitored the transactions via physical, video and audio surveillance and corroborated Agent Simmons’ testimony. Although the defendant denied, several times during his testimony, any familiarity with such criminal activity, the jury obviously did not believe him. The determination that the defendant’s denials were not credible is supported by Agent Simmons’ testimony that based upon the defendant’s haggling and negotiation as to the price of the heroin, the | fidefendant was very knowledgeable about narcotics. The State’s evidence established that the defendant transferred possession of heroin to Agent Simmons. Moreover, within minutes of the transaction, the defendant was arrested and found in possession of four marked twenty-dollar bills that Agent Simmons had given him in payment for the heroin. . The jury found the defendant’s explanation of events incredible. A fact finder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Harris, 99-3147, p. 6 (La.App. 4 Cir. 5/31/00), 765 So.2d 432, 435. It cannot be said that the jury’s credibility decision in the instant case was clearly contrary to the evidence. There is no merit to this assignment of error.

WRIT APPLICATION

In its writ application, the State complains that the trial court erred in retroac *50 tively applying the sentencing amendments to La. R.S. 40:966(B)(1) and 40:979 to this case, and sentencing the defendant to only seven years[1] instead of the pre-amendment minimum of eight years.
In sentencing, the defendant, the trial judge noted:
I think the Court can take into consideration that the Legislature has seen fit to reduce these penalties, to bring this in under [State v.] Dorthey [1278-1279, 623 So.2d 1276 (La.1993) ][2] ... I don’t mean to imply that the amendment [Act 403] in and of itself is to be applied retroactively in Louisiana. But in light of all that has transpired and the recommendation of the person who |7has prepared this report for the Department of Parole and Probation, I find that to require the eight year sentence and not allow the gentleman a change with one year less being imposed to be considered for Intensive Incarceration Program, I find that in itself would be an injustice....
Obviously, the trial judge imposed the lighter sentence pursuant to Dorthey, rather than the amendment to the above referenced statutes.
Louisiana’s judiciary maintains the distinct responsibility of reviewing sentences imposed in criminal cases for constitutional excessiveness. State v. Sepulvado, 367 So.2d 762 (La.1979). However, in order to find the punishment excessive, the trial judge must find that the sentence makes no measurable contribution to the acceptable goals of punishment or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Dorthey, 623 So.2d 1276 (La.1993).
When seeking to rebut the presumption of constitutionality, the defendant must show by clear and convincing evidence that he is “exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case.” State v. Johnson, 97-1906, p. 8 (La.03/04/98), 709 So.2d 672, 676, citing State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525. Downward departures should only occur in rare situations. Johnson, p. 9, 709 So.2d at 677.
As justification for the downward departure in sentencing in this case, the trial judge cited the defendant’s age (seventeen at the time of the Loffense), lack of maturity, that the pre-sentence report recommended the defendant for intensive incarceration/intensive parole supervision and that the penalties for the crimes for which the defendant was convicted have been recently reduced. The trial judge also indicated that he identified with the defendant because the trial judge’s father died when he was eleven years old and the defendant’s father died when he was eight or nine years old.
*51 However, the pre-sentence investigation report indicates that in less than three years’ time, the defendant accumulated a juvenile record of eight arrests, resulting in two adjudications — one for simple burglary of an inhabited dwelling in 1997 and the other for possession of marijuana in 1999. His adult record includes five arrests in little more than one year with convictions for criminal trespass, possession of marijuana and attempted distribution of heroin. The report also discloses that the defendant did not finish school and in fact “was suspended from school for fighting and was a habitual violator of school rules. He showed willful disrespect for school authorities and cursed the staff at the group home.” He admitted to the daily use of marijuana since 1996 and has never held a job. The defendant’s record shows that his criminal behavior is escalating. His youth and immaturity do not justify a downward departure in the sentence as required by Dorthey, especially in light of his recidivist behavior.
The following colloquy from the sentencing hearing re-enforces the conclusion we have reached:

BY THE COURT:

Thank you. This is the so-called Washington and Magazine case. My only concern with the comment of the gentlemen in the report is that the |aofficer’s testimony, I believe he was a State Trooper, I don’t have anything in front of me, I’m just going by recollection, was that this gentleman made more than one transaction date with this gentleman.
MS. CLINE: [THE PROSECUTOR]
Yes, Sir.

BY THE COURT:

More particularly, the defendant made it with the officer.
MR. HURTT: [DEFENSE COUNSEL]
But the one before he reached his 18th birthday was the one that involved heroin. The second transaction did not involve a controlled dangerous substance.

BY THE COURT:

But it was something he told the officer was a controlled dangerous substance.
The State’s writ application has merit.

DECREE

For the foregoing reasons, we affirm the defendant’s conviction, vacate his sentence and remand to the trial court for resen-tencing consistent with this opinion.
CONVICTION AFFIRMED; CASE REMANDED FOR RESENTENCING.

. Act 403 of the 2001 regular session of the state legislature, amended La. R.S. 40:966 and R.S. 40:979 by reducing the sentence for conviction of attempted distribution of a narcotic substance to a range of five to thirty years. The effective date of the amendment was June 15, 2001, with prospective effective only. In this case, the incidents for which the defendant was charged occurred on April 5 and May 10, 2001.

. While Dorthey involved a mandatory sentence under the habitual offender laws, the sentence review principles espoused in Dor-they are applicable to mandatory sentences imposed by substantive criminal statutes. State v. Fobbs, 99-1024 (La.9/24/99), 744 So.2d 1274.