952 So.2d 770 (2007)
STATE of Louisiana
v.
John N. NIONS.
No. 2006-KA-1374.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 2007.
*771 Eddie J. Jordan, Jr., District Attorney, Alyson R. Graugnard, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge TERRI F. LOVE, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD).
TERRI F. LOVE, Judge.

STATEMENT OF THE CASE
The State filed a bill of information charging the defendant-appellant, John Nions, with one count of distribution of cocaine, a violation of La. R.S. 40:967(A). He entered a not guilty plea at his arraignment. After counsel waived motions, the appellant proceeded to a trial before a twelve-person jury. After hearing the testimony, the jury returned a verdict of guilty as charged. The court sentenced the appellant to five years at hard labor, of which, three were ordered suspended. The appellant immediately filed a motion for an appeal, which was granted.

FACTS
Detective Nickki Johnson was assigned to the Major Narcotics Unit of the New Orleans Police Department. The unit was targeting street-level narcotics dealers at the time, and Detective Johnson was participating as an undercover officer. She was driving on Lyons Street near Magazine when she saw the defendant standing in front of a store. She signaled to the defendant in a manner designed to determine if he was selling any narcotics. She then pulled her vehicle over and parked. The appellant walked up to the driver's side of the vehicle. Detective Johnson asked him for two dimes, which she testified was street slang for narcotics, either crack cocaine or marijuana. The defendant handed her two pieces of crack cocaine, which were wrapped inside a piece *772 of plastic. The detective gave him money and drove away.
After driving away, Detective Johnson advised the take-down team over the radio of what had transpired. She provided a description of the appellant and his clothing. She subsequently turned over the cocaine that she obtained from the appellant to Detectives Corey Robinson and Yussef Willoughby.
At trial, Detective Johnson identified the appellant as the man who sold her narcotics. She further identified a videotape of the narcotics transaction, which had been made with the equipment in the van that she was driving at the time of the undercover operation. The tape was played for the jury.
On cross-examination, Detective Johnson stated that the appellant was coming out of the store when she first saw him and he did not wave her down. Instead, she signaled to him by making a gesture as if she were smoking to see if he would come over.
Detective Willoughby testified at trial that he participated in the "buy/walk" operation on this day. He explained that in a "buy/walk" operation, after a sale is made to the undercover officer, the take-down team moves in to identify the subject. The take-down officers photograph the subject, obtain his name and information, and then let him go. The police later obtain an arrest warrant for the subject and execute it after the operation has entirely concluded. The detective stated that, for this particular operation, he was in an unmarked vehicle from which he could hear the conversation between the undercover officer and suspected narcotics dealer; his role was described as surveillance and cover for Detective Johnson. He observed the transaction between her and the appellant.
Detective Corey Robinson testified that he also was acting in a surveillance capacity on the day of the incident. He was unable to observe the transaction because of his position, however. He later received the evidence from Detective Johnson and maintained custody of it until he turned it over to Central Evidence and Property. The parties stipulated that Criminalist Harry O'Neal would testify that the material placed into evidence tested positive for cocaine.
The defense presented no witnesses.

ERRORS PATENT
A review of the record reveals one error patent. When the court imposed sentence, it ordered that the appellant serve two years of the five-year sentence and suspended the remaining three years. However, the court failed to further order that the first two years be served without the benefit of parole as required by La. R.S. 40:967(B)(4)(b). However, as per La. R.S. 15:301.1A and State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, the sentence is deemed to have been imposed with this restriction even in the absence of the trial court's failure to delineate it. Thus, there is no need for this Court to correct the sentence.

ASSIGNMENT OF ERROR AS TO ENTRAPMENT
The appellant assigns a single error: that the State failed to meet its burden of proof by failing to prove beyond a reasonable doubt that he knowingly and intentionally distributed cocaine and was not entrapped into doing so.
"Entrapment" is an affirmative defense that applies when a law enforcement official originates the idea of the crime and induces another person to engage in conduct constituting the crime, when the other person is not *773 otherwise disposed to do so. The defendant claiming entrapment must prove the defense by a preponderance of the evidence. State v. Brand, 520 So.2d 114, 117 (La.1988); State v. Smith, 97-2221 (La.App. 4 Cir. 4/7/99), 734 So.2d 826, 831, writ denied, 99-1128 (La.10/1/99), 747 So.2d 1138. To adequately support an entrapment defense, the defendant must present exculpatory circumstances that defeat culpability even though the state proved all essential elements of the crime beyond a reasonable doubt. State v. Byrd, 568 So.2d 554 (La.1990); State v. Cheatwood, 458 So.2d 907 (La. 1984); 584 So.2d 724, State v. St. Amant, 584 So.2d 724 (La.App. 4 Cir. 1991). The reviewing court must consider the defendant's predisposition to commit the crime as well as the conduct of the police officers involved. State v. Batiste, 363 So.2d 639 (La. 1978).
State v. Harry, 01-2336, pp. 9-10 (La. App. 4 Cir. 6/26/02), 823 So.2d 987, 995.
In entrapment cases, courts are called upon to draw a line "between the trap for the unwary innocent and the trap for the unwary criminal." State v. Brand, 520 So.2d 114, 117 (La.1988). "An entrapment defense will not lie if the officers or agents merely furnished a defendant who is predisposed to commit the crime the opportunity to do so." State v. Moody, 393 So.2d 1212, 1216 (La.1981). State v. Prudhomme, 532 So.2d 234, 240 (La.App. 3 Cir.1988). Allegations of entrapment are reviewed on appeal under the standard for sufficiency of evidence enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1970). State v. Long, 97-2434, pp. 10-11 (La.App. 4 Cir. 8/25/99), 744 So.2d 143, 150-51. The relevant inquiry is "whether any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could conclude that the defendant did not prove that he was entrapped by a preponderance of the evidence." State v. St. Amant, 584 So.2d 724, 726 (La.App. 4 Cir.1991).
In State v. Weaver, 99-2177 (La.App. 4 Cir. 12/6/00), 775 So.2d 613, the defendant argued that it was clear that an undercover police officer took the lead in inducing him to distribute narcotics because the officer had approached the defendant and asked for a "dime." Id. at p. 4, 775 So.2d at 616. This Court rejected the defendant's argument, noting that the undercover police officer testified at trial that the defendant had signaled to him to stop, "thus drawing the officer's attention to him." Id. When the officer asked the defendant what was going on, the defendant asked him what he was looking for. When the officer indicated that he wanted dimes, the defendant replied that he had only narcotics valued at twenty dollars. As soon as the officer agreed to accept the larger amount, the defendant pulled two pieces of crack from a canister and handed them to the officer, then accepted money in return.
The only difference between Weaver and the instant case is that Detective Johnson made a gesture indicating she was looking for narcotics to smoke; the appellant did not wave her over. However, she did not physically approach him, as the officer did in Weaver. Instead, she parked her vehicle, and the defendant walked over to her. When she asked for narcotics, he immediately produced crack cocaine from his person, gave it to her, and received money in return. Notably, Detective Johnson testified she did not specify whether she wanted cocaine or marijuana; the exact type of narcotics given to her by the appellant was his decision. Furthermore, the videotape of the transaction was played for the jury, and thus the jurors were able to confirm *774 for themselves on a first-hand basis that Detective Johnson did not have to induce the appellant to sell her narcotics.
In any event, the mere fact that a police officer approaches the defendant first does not mean that the subject has been entrapped. For example, in State v. Alford, 99-0299 (La.App. 4 Cir. 6/14/00), 765 So.2d 1120, the police were targeting the defendant for drug sales in the Central Business District. An undercover police officer went to the defendant's place of employment and inquired as to whether the defendant would sell him fives ounces of cocaine for $4,700.00. The defendant indicated that he did not have the cocaine on site, but could have someone bring it. During this conversation, one of the defendant's fellow employees, Marquis Davidson, made a phone call. However, after a wait of several hours, no cocaine had been delivered. The defendant told the officer to return the following day. When the officer came back, there was another delay, but finally, a vehicle occupied by several persons arrived. Davidson went to the vehicle, obtained the cocaine, and showed it to the officer, who then said he would get the money from his car. As the officer pretended to do so, he signaled to the rest of the narcotics team to move in and arrest all of the subjects.
On appeal, Alford argued that the evidence demonstrated that the undercover officer approached him and persuaded him to obtain the cocaine to sell him, and that he was induced to do so because of the large amount of money offered. The defendant noted that he had no cocaine on his person or within the vicinity when approached and ultimately had some difficulty obtaining it for the officer. In rejecting the defendant's argument, this Court noted that, even if the defendant were induced to sell narcotics, the State more than proved that he had the predisposition to commit the crime. This Court noted that the defendant readily offered to find the drugs and pursued the matter on the following day. Also, this Court noted that the undercover officer had testified that, during the wait on both days, the defendant had offered to sell marijuana.
Here, Detective Johnson's sole action that could be remotely considered inducement was her gesture to the appellant, which indicated she was in the market to purchase narcotics. The appellant was clearly predisposed to sell narcotics and initiated the conversation with the officer.
This assignment of error lacks merit.

DECREE
The appellant's conviction and sentence are affirmed.
AFFIRMED.